CALK
vs
OREAR.

to find the fact that it was the purpose of the lessor that the tenement should be used as a bawdy house, and that he was a co-operator in the unlawful use made by the lessee.

---

ASSUMPSIT.

*Case* 134.

*April* 23.

The case stated.

## Calk *vs* Orear.

ERROR TO THE BATH CIRCUIT.

*Merger.   Assumpsit.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

THE plaintiff in error, (*Thomas Calk, Sr.*) being indebted to the defendant in error, (*John D. Orear,*) on an implied *assumpsit* for a wagon made for him, and at his instance delivered to his infant son, (*Thomas Calk, Jr.*) The latter, without his father's authority, executed to *Orear* a promissory note for the amount due, and which was intended to be the note of *Thomas Calk, Sr.* and was so received by *Orear*.

*Thomas Calk, Sr.* refusing to recognize the said note as his obligation, *Orear* sued him *in assumpsit* on the original consideration, and recovered a judgment—now sought to be reversed on the ground that the parol liability had been merged in the note.

The execution of a note by one who is unauthorized, for a

But we are clearly of the opinion that there was no such *merger*, because the note having been unquestionably accepted as the obligation of *Thomas Calk, Sr.* and

being void as to him and hitherto repudiated by him, it could not be deemed a legal satisfaction or extinguishment of his pre-existent liability. And, therefore, were it admitted to be technically the obligation of his infant son, on which *Orear* might sue that son and escape the plea of infancy; nevertheless he cannot be required to make any such hopeless experiment, as the note has not merged or extinguished the father's original liability *in assumpsit.*

The judgment is therefore affirmed.

*Morehead & Reed* for plaintiff; *Apperson* for defendant.

CALK
*vs*
OREAR.

simple contract debt, though received as the note of the principal does not merge the simple contract.

## PETITION FOR A RE-HEARING,
### By Morehead & Reed.

The counsel for the appellant in this case, feel reluctantly compelled to petition the Court for a re-hearing. They do so in a full knowledge of the influences to which their judgments may be liable, from the interest they would naturally feel for the cause of their client; and therefore, keeping that influence in view, they would not have intruded this petition upon the time and attention of the Court, did they not believe, in their deliberate judgments, that the Court had overlooked some features in the cause which, if observed, might have resulted in a different opinion.

We will briefly exhibit such facts, from the record, as are deemed essential to the satisfactory presentation of our case.

Orear sued Thomas Calk, Sr., the plaintiff in error, upon an implied assumpsit, for $110, the price of a wagon, which he proved he (Orear) had made, and traced it into the possession of the plaintiff, giving other evidence conducing to show, that Calk had contracted in parol for the same; he proved the wagon was worth the money claimed, and closed his proof. The plaintiff in error then called on the defendant to produce a note in his possession, to be read as evidence on the trial of the cause, under a notice to that effect, before the jury was

sworn; and thereupon the defendant produced the following note:

"$110.   Due John D. Orear one hundred and ten dollars, for value received of him this 7th day of March, 1840.                    THOMAS CALK, JR. for
                                        THOMAS CALK, SR."

This note was read in evidence to the jury.  Tho. Calk, Jr. (who was the son of Thos. Calk, Sr.) was then sworn on his behalf; he proved that some time before the wagon was made, his father sent him to Orear to have an ox wagon made according to certain specifications, with which we need not burthen this petition; that "in March, "1840, he went to Orear's shop for the wagon, and when "he went it was done and he told Orear he had come "for it; Orear then informed him he could not get it un-"less he executed a note for the price or paid the money; "that he then executed the note which the plaintiff had "produced, and which has already been referred to; and "that when he was sent to Orear's by his father, he was "instructed to get the wagon and bring it home, and he "executed the note at the request of Orear, for the price "of the wagon, and that Orear took it in that way.  He "executed the note as his *father's* and not his *own*.  His "father, when he told him he had executed said note, "said he ought not to have done it.  He also proved he "was not 21 years old at the time he executed said note, "nor yet."

The note executed by Thomas Calk, Jr. was unquestionably his sole obligation; the father was not bound by it in any intent whatever, and it being an obligation of a higher dignity than the father's *assumpsit* for the wagon, and having *unquestionably* been given in consideration of the father's *assumpsit*, if it was the note of Calk, the son, and as such, binding on him, it was as complete a merger of the unwritten contract as though it had been executed by the father himself.  The note of one partner, if given upon a contract of inferior dignity, is *prima facie*, an extinguishment of the partnership liability.  As such it will not be deemed even a collateral security; but in the absence of opposing proof, it will

be considered the single obligation of·the party making it: see *Doniphan & Smoot* vs *Gill,* 1 *B. Mon.* 200.

If then the written obligation of one of two partners will, *prima facie,* be deemed an extinguishment of a firm parol liability, surely the execution of an individual note by the son in this case, who, in law, is a stranger, would have the same effect; and the execution of a note by a stranger in every sense of the word, would be attended by similar consequences. There may be, and certainly are, .stronger reasons (in the case of a firm transaction of this sort) contradicting the idea that the note was intended as an extinguishment of the firm debt, than in a case where a similar transaction takes place, as between strangers. In the former case, by accepting the written obligation of one member, a valid *joint* obligation upon both is destroyed; a single obligation is taken upon one, who, without the obligation was *bound* and the other is released, *ipso facto,* if it was so intended. In the latter case the obligation is transferred from one person to another, a stranger, and there are strong reasons operating to make the presumption almost conclusive that the obligation was intended to be a satisfaction of the first debtor's liability. A, the first debtor, may be insolvent and the debt is transferred to B, the second *debtor,* and who binds himself by the writing, the creditor has no inducement to make the transfer because B is solvent and would ·not be bound without the writing. In the case of the firm debt, although one may be solvent and the other insolvent, both were *bound* for the debt. The only conceivable motive, therefore, which could operate on the mind of the creditor to take the note of one of the members, omitting the name of the other, is, that the character of the obligation may be elevated. We have made these preliminary suggestions, not with the view of *gravely* pressing the idea upon the Court, that a written obligation of a stranger is *prima facie* evidence that the writing was given in satisfaction of the unwritten contract for which it was given, where there *is* such unwritten contract—this we all know; and it would be doing injustice to ourselves to suppose we would deem an argument upon such a proposition, with

such a purpose, necessary; our object is rather to show, and keep the idea in view, that there are various grades of *prima facie* evidence, as well as *conclusive* evidence, each of which will be dependent upon its own peculiar circumstances for the force of its persuasiveness, thus arguing in the end that the jury should have had a question which is yet to be brought to the attention of the Court, and upon which we may here state, this petition is based.

It may be set down, 1st, that *in law* this note is the obligation of the son; to be sure, if the son were sued upon it, there might be circumstances which would forbid a recovery as against him, though we question whether he could attain his defence elsewhere than in chancery; but, *in law*, upon its face, it is his own obligation and that of no one else; it is no where, neither in law nor chancery, the *obligation* as such, of the father.

We may also set down as a proposition, about which there can be no dispute, 2d, that *prima facie*, it was received in satisfaction of the father's *assumpsit*.

If then this is in truth and in fact the debt of the son, and if it is *prima facie*, an extinguishment of the father's debt, the father surely had a right when sued on his original contract in assumpsit, to rely upon that fact. Tested then by this obvious principle of law and justice, what right had the Court below to refuse an instruction hypothecated on this very idea. Calk asked the Court to tell the jury that "if they believed from the evidence that Thomas Calk, Jr. was bound by said note for the price of the wagon, that then they must find for the defendant." The instruction, it is true, might have been more aptly worded if the Court had been asked to tell the jury "that if the note was given in satisfaction of Thomas Calk, Sr's. assumpsit for the wagon, then they must find for the *defendant;*" but the instruction as asked is this in substance: if Thomas Calk, Jr. was *"bound"* by the note, then it was given in *satisfaction of the assumpsit;* if he was *not bound*, then it was *not given in satisfaction of the assumpsit;* and now should not the Court have given that instruction? The whole issue turned upon the question as to whether or not the note

was given in *satisfaction* of the *assumpsit* of the father; if there was evidence *conducing* to show that fact, should not the Court have thus instructed when asked?    Surely. Was there not evidence *conducing* to show that fact? Unquestionably.    Was not the note itself *prima facie* evidence of the fact?    It has been so decided a hundred times.   If it was, is not the barrier between the Judge and the jury broken down forever, if the Court undertake to refuse an instruction based upon evidence, because the evidence does not show the fact so as to satisfy the mind of the Judge?    The question is not what is the weight of the evidence, nor how strongly does it tend to establish the issue; but does it *tend* that way—does it *conduce* to show the fact?    If so, be the tendency never so faint, the Judge must let the jury have the fact—if faint and unsatisfactory the jury will apply the corrective; and here was the error of the Circuit Judge.    He believed the weight of evidence, (and in this opinion he was unquestionably right,) was for Orear, and hence refused the instruction; and this we are forced to believe is the error of this Court.

The Court say, Thomas Calk, Sr. refusing to recognize the said note, &c., (the Court makes the evidence *too strong* when it uses the foregoing terms.)    Thomas Calk, Sen. never did refuse to recognize the note, but merely told the son "he should not have executed the note."    But this Court go on to say, "but we are clearly of opinion there was no such merger, because the note having been unquestionably accepted as the obligation of Thomas Calk, Sr., and being void as to him, and hitherto repudiated by him, it could not be deemed a legal satisfaction in extinguishment of his pre-existent liability; and therefore, were it admitted to be technically the obligation of his infant son, on which *Orear* might sue that son and escape the plea of infancy; nevertheless, he cannot be required to make any such hopeless experiment, as the note has not merged or extinguished the father's original liability *in assumpsit*."

The Court is of opinion then, there was no such merger "because the note was unquestionably accepted as the obligation of Thomas Calk, Sr." and that it "was

CALK
*vs*
OREAR.

void as to him." We repeat, that we think the *weight* of evidence showed that there was no such merger: but does not the Court perceive that the question of *merger* or *no merger* is here taken from the jury, or rather the facts, which in law constitute a *merger*, are taken from them. Suppose the son had been sued; suppose he had proved that it was agreed between himself and Orear that this was to be the obligation of the father; that he, in no event, was to be bound for the note, that he executed it as the obligation of the father; that it was his father's note, and this was proved by a dozen credible witnesses. Suppose Orear sues the son and proves by a single witness of disreputable character, that he, the witness, was present at the same time and no such conversation took place. Suppose then Orear asks the Court to tell the jury "that if they believe from the evidence that Thomas Calk, Jr. did execute the note in satifaction of the father's assumpsit, they must find for him," can the Court refuse the instruction? And are not the cases perfectly analagous? Because, therefore, the Court below refused an instruction which was the law of the case, and which was hypothecated upon a state of facts properly before the jury, thereby taking the consideration of that state of fact from the jury, and because this Court has followed up that opinion, believed for the foregoing reasons, to have been erroneous, they are most respectfully solicited to review and reverse the case.

RESPONSE,

*May* 31.                    By Chief Justice Robertson.

This we considered a plain case, and therefore the opinion as delivered, was as short and comprehensive as we could make it, so as to be intelligible and responsive to every essential question that could be judicially raised in it. We still consider it a very plain case even on the able and ingenious petition itself.

The petition properly admits, that the note is technically that of the minor son, and was neither authorized by, nor is legally obligatory on the father. It also con-

cedes that, unless the note, *as the obligation of the infant son*, was accepted in satisfaction of the father's liability, this action may be maintained on the implied assumpsit. Can there be any doubt that the note was not accepted, *as the obligation of the son*, in satisfaction of the father's liability? Did not that son himself testify, as his father's witness, that the note was given and received as the father's, *and not as his own obligation?* And that was the only evidence on that point except the style of the note itself, and the fact that the son was a minor and probably also destitute of the means of payment; both of which circumstances only confirm that son's testimony. How then would it have been possible for the jury to have found that the *note of the son*, intended and understood as such, had been given and accepted in discharge of the father's debt? They could have had no pretext for such a finding.

But moreover, even if we could be wrong in this conclusion, there was no error in refusing to instruct the jury, as asked, "that if Thomas Calk, the son, was *bound by the note they must find for the defendant*," for, admitting the note to be binding on the son, is the conclusion either necessary or even rational, that *therefore*, it was, when given, understood to be binding on him and not on his father, and, with such understanding, was accepted in discharge of the demand against his father? The very converse is obvious and indisputable upon the proof in the cause.

We cannot, therefore, perceive a semblance of error in the judgment. The case of *Doniphan* vs *Smoot*, is decisive of this case.

Petition overruled.